## Dolan's Estate.

*Surcharge of executor—Mingling of funds in private business—Rights of legatees.*

Where the business of an estate was designedly mingled with that of a bank of which the executor was cashier and part owner, the legatees should not suffer in their distributive shares through the attempt of the executor as cashier to make money for the bank. A surcharge will be sustained which gives to the legatees just what they are entitled to receive, while at the same time fairly compensating the executor for all duties performed.

Argued May 7, 1900. Appeal, No. 29, April T., 1900, by R. M. Moore, executor of Christina E. Dolan, deceased, from decree of O. C. Clarion Co., Aug. T. 1898, No. 9, dismissing exceptions to auditor's report. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by ORLADY, J.

The facts sufficiently appear in the opinion of the court.

The court below entered the following decree:

[And now, June 1, 1899, after argument of counsel, and upon due consideration of the evidence and exceptions, on the part of accountant, and of the heirs and devisees to the report of the auditor, and of the report, the said exceptions are dismissed,

and the exceptions to the account of the executor, in so far as they are sustained by the auditor, and the restatement of his account, as such executor, and the report of the auditor are hereby sustained, and the report thereon confirmed absolutely; the cost thereon of $72.00 on exceptions to account to be paid as follows, to wit: $36.00 thereof by R. M. Moore, executor, and the remaining $36.00 out of the estate of said Christina E. Dolan, deceased, and it is further ordered that the report of the auditor on distribution be confirmed absolutely, according to the schedule of distribution annexed to said report.   The additional costs of the clerk of the court, on exceptions and the filing of this opinion and order, to be paid by R. M. Moore, the executor, as to the one half thereof, and the other half thereof by the heirs and devisees, exceptants.] [1]

R. M. Moore, executor, appealed.

*Error assigned* was to the decree of the court, reciting same.

*J. T. Maffett*, with him *G. G. Sloan*, for appellant.—It seems like an affectation of learning to cite authorities to the effect that five per cent is the usual rate of commission in estates of this size, and likewise that an executor is not liable for interest not received where there has been a prompt and faithful settlement of the estate.

Under the terms of the will it was the executor's duty to proceed to convert the assets of the estate into current funds, and proceed to settle the estate: Fox v. Wilcocks, 1 Binney, 194 ; Verner's Est., 6 Watts, 250.

The fact that Moore was a stockholder in the bank is irrelevant, and in itself no ground for surcharge, even if a profit was made by the bank out of the money.

The depositor has no right to an account from the bank of the use to which it put his deposit, or the profits accruing from its use: Dick's Estate, 183 Pa. 647 ; Hess's Estate, 68 Pa. 454.

Trustees who have acted in good faith, and under the advice of counsel, are not responsible for an error of judgment, or a mistake of law: Bradley's Appeal, 89 Pa. 514.

Recurring again to the general duties of executors, we refer to Merkel's Estate, 131 Pa. 584: "It is the duty of administrators to convert the personal property within a year after the

grant of letters to them. If, within that period, they make a fair public sale of it, the proceeds thereof is the measure of their liability."

*W. J. Breen*, for appellee, filed no paper-book.

OPINION BY ORLADY, J., July 26, 1900:

On September 23, 1897, the appellant qualified as executor of the last will and testament of Christina E. Dolan, and filed his final account on July 13, 1898. The estate consisted solely of personal property aggregating $11,544.69, as per the appraisement filed on October 23, 1897, of which amount $7,823.42 were in United States four per cent bonds, interest payable quarterly, maturing in 1907, and $2,500 in a mortgage and judgment.

The executor was the cashier and a two-fifths owner of a private bank in Parker, Pennsylvania, the capital stock of which was $10,000, with deposits of about $40,000, and loans of about $25,000, on which it realized six to eight per cent. Thirteen days after he was authorized to act as executor he sold the United States bonds, and deposited the result of the sale to the credit of his bank, with its correspondent in New York city, and on the same day he credited his account, as executor, in his banking house with the same amount. The eastern correspondent paid the Parker bank one and one half per cent on deposits over $3,000, on daily business. The $2,500 due on the mortgage and judgment was promptly paid, and at the decedent's death she had in the bank a balance of $606.27. These three items aggregate $10,929.69. In his account he claimed credit of $586.97 for services; $34.10 for personal expenditures, and $200 for attorneys' services. No interest was paid to the estate's account on the money deposited in the bank, nor to the accountant personally, though he received his proportionate share of the profits of the bank's business. The auditor surcharged the accountant with the sum of $310, being interest on the $7,000, United States bonds, from the date of their sale by the executor to the time of the filing of his account, and reduced his commission to $293.48. The court, after a full hearing confirmed the report of the auditor.

The executor paid certain legacies to the children by taking

one day, on demand, notes of the legatees, on which bank discounts were charged against the legacies. The auditor found as a fact, " that the accountant had used his position as executor of this estate to make a discount for the Exchange Bank on legacies paid Edward and Carrie Glass of at least ten per cent in addition to the five per cent charged by him as executor in his account for services." This arrangement was invented by the accountant, and made possible by his being executor of an estate, which almost as soon as he was qualified to act for it, increased the deposits in the bank, in which he was part owner, to a greater amount than its capital. The accountant's bank—and indirectly the accountant—received the exclusive advantage of this transaction. The investment by the decedent in the interest-bearing securities could have been converted into cash at any time. It was not a failing security, but was increasing in value while yielding interest. The change increased the risk and responsibility of the accountant and it was made in the interest of his personal enterprise. The business of this estate was designedly mingled with that of the bank by the cashier executor, and therefore the legatees should not suffer in their distributive shares through the attempt of the cashier to make credit and money for his bank. The result reached by the auditor gives to the legatees just what they are entitled to receive, and the executor is fairly compensated for all duties performed by him. The imposition of part of the costs is but fair in light of the facts.

The decree of the orphans' court is affirmed.